2020 IL App (1st) 180889-U

No. 1-18-0889

Order filed April 10, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 16 CR 9274 |
| JOSEPH EVANS, | ) ) | Honorable Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's burglary conviction is affirmed where the trial court adequately admonished him regarding his rights to counsel and to a jury trial.

¶ 2    Following a bench trial at which he proceeded *pro se*, defendant Joseph Evans was found guilty of burglary and sentenced to three years' imprisonment. On appeal, defendant argues that

the trial court did not adequately admonish him of his rights to counsel and jury trial, resulting in his unknowing waiver of both rights. For the following reasons, we affirm.[1]

¶ 3    Defendant was charged by information with one count of burglary in that he "knowingly and without authority entered a motor vehicle" with the intent to commit a theft therein. 720 ILCS 5/19-1(a) (West 2016).

¶ 4    At arraignment on June 27, 2016, the trial court asked defendant whether he would hire an attorney or wanted the court to appoint one. Defendant stated that he wanted one appointed. The court appointed an Assistant Public Defender (APD) and read the charge. Defendant stated he understood. The court asked if defendant knew what a trial by jury is, and defendant stated he did. The court then admonished defendant that he had a right to see witnesses testify against him, to cross-examine those witnesses, to remain silent, and to an attorney. The court clarified, "I've appointed [an attorney] for you." It continued admonishing defendant that if convicted, he could be sentenced to imprisonment for three to seven years, receive up to a $25,000 fine in addition to mandatory fines, fees, and costs, and be subject to two years' mandatory supervised release.

¶ 5    At a hearing on August 31, 2016, the APD notified the trial court that defendant retained private counsel. Defendant stated that private counsel would appear on September 14th.

¶ 6    On September 14, 2016, private counsel appeared for defendant. The APD tendered discovery to private counsel and sought leave to withdraw. The court confirmed with defendant that he wanted private counsel to replace the APD, and then granted the APD leave to withdraw.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 7    At a hearing on June 14, 2017, defendant told the trial court that there was a "conflict of interest" between himself and private counsel regarding defendant's "freedom." The following colloquy occurred:

> "THE COURT: Well, you hired him, you can fire him, it's up to you.
>
> THE DEFENDANT: *** At this moment, I would like to fire my attorney.
>
> THE COURT: And who is going to represent you?
>
> THE DEFENDANT: I will, your Honor."

Private counsel stated that he was prepared for trial, but did not "want to stand in [defendant's] way." The court granted private counsel leave to withdraw and passed the case so that the court could give defendant "some warnings."

¶ 8    When the case was recalled, the trial court twice asked defendant whether he wished to represent himself and defendant stated "correct" and affirmative." The court inquired how far he went in school. Defendant stated he completed two years of college and received As, Bs, and Cs. The court then admonished defendant of the charge and the potential penalties. The court advised that defendant could not merely tell his "story," but would need to adhere to technical trial rules, that the prosecutor would be an experienced attorney, and that defendant may advantage the prosecution by failing to understand trial procedure. The court warned that the defense could be diminished by defendant's dual role as attorney, that defendant could not challenge his own effectiveness on appeal, and that the court could not provide special consideration or help for defendant. The court noted that an attorney could help determine possible defenses and lesser penalties, and that defendant could not change his mind about representation after the trial started. Defendant stated that he understood, and the court allowed him to proceed *pro se*.

¶ 9     At hearings on July 31 and August 24, 2017, defendant advised the trial court that he was considering rehiring private counsel. On September 26, 2017, defendant proceeded to trial *pro se*.

¶ 10    The trial court informed defendant of his right to a jury trial and asked if he wished to have that or a bench trial. Defendant answered that he wanted a bench trial and wished to waive his right to a jury trial. The court asked for a jury waiver form, and the State tendered one to defendant. The following colloquy occurred:

> "THE COURT: Did anybody make any promises or threats to you to get you to waive your right to a trial by jury?
>
> [THE DEFENDANT]: No, your Honor.
>
> THE COURT: Did you make that decision of your own free will?
>
> [THE DEFENDANT]: Yes, I did, your Honor.
>
> THE COURT: This is your signature?
>
> [THE DEFENDANT]: Yes, your Honor.
>
> THE COURT: Jury waiver is accepted."

The form stated: "I, the undersigned do hereby waive jury trial and submit the above entitled cause to the Court for hearing."

¶ 11    At trial, Robyn A. Henderson-Brandon testified that she works at a salon on the 8900 block of Stony Island Avenue. On June 4, 2016, Ms. Henderson-Brandon escorted her client, Veronica Earls, to Ms. Earls's vehicle. Ms. Henderson-Brandon saw a young man inside the vehicle, "leaned over going through" the vehicle's passenger side. In court, Ms. Henderson-Brandon identified defendant as the man. Ms. Earls, a police officer, put on her badge and approached defendant, who ran through a door to a "small gangway" on the side of a nearby building. On June 6, 2016, Ms.

Henderson-Brandon met with detectives and identified defendant, whom she had seen around the neighborhood prior to the incident, from a photo array.

¶ 12    Ms. Earls testified that she was a police officer. On June 4, 2016, while off duty, she parked outside the salon, went inside for approximately 10 minutes, and left with Ms. Henderson-Brandon. Ms. Earls then saw someone in the front passenger side door of her vehicle with his "upper torso" facing the driver seat. As Ms. Earls approached, she "noticed the guy up and down inside the car, looking both ways just to make sure no one saw him inside." In court, Ms. Earls identified defendant as the man. Ms. Earls announced her office, displayed her badge, and struggled to grab defendant. Defendant escaped and ran into a nearby building. Afterwards, Ms. Earls returned to her vehicle and saw that the driver side door was bent, causing her to guess that a "tool" was used to open it. A cell phone, paperwork, money, and the "entire coin holder" were missing from her vehicle. On June 6, 2016, Ms. Earls met with detectives and identified defendant from a photo array.

¶ 13    Kenneth Ford testified that he owned a three-story apartment building on the 8900 block of Stony Island. In court, Mr. Ford identified defendant as a resident of one of those apartments on June 4, 2016. On that date, Mr. Ford met Ms. Earls and two police officers at his building. On cross-examination, Mr. Ford testified that he took the officers into defendant's apartment.

¶ 14    The defense called Tequella Ewing, who testified that on June 4, 2016, defendant helped her move from 67th Street and Laflin Street to 113th Street and Wentworth Avenue. They began at 10 a.m. and finished around 7 or 8 p.m. On cross-examination, Ms. Ewing testified that she was a "longtime family friend" of defendant.

¶ 15    Defendant testified that he did not commit the offense. On cross-examination, defendant testified that he did not talk to Ms. Ewing "explicitly about the case" prior to trial, but that she told him what her testimony would be. Defendant lived in the building on the 8900 block of Stoney Island, as did two other men, including one who was a year older or younger than defendant.

¶ 16    The trial court found defendant guilty of burglary, noting that the State's witnesses were credible and the defense witnesses were incredible.

¶ 17    On October 30, 2017, defendant informed the trial court that he filed a "motion for reconsideration." At a hearing on November 13, 2017, defendant stated that he filed a motion for a new trial and had retained the same private counsel who represented him before trial. The attorney was not present at the hearing. Defendant offered to proceed *pro se* until private counsel arrived, but the trial court advised him to wait.

¶ 18    On November 30, 2017, defendant told the trial court that private counsel was unavailable to take the case because he had not reviewed defendant's motion. Defendant requested another continuance to speak with private counsel, which the court granted.

¶ 19    On December 14, 2017, defendant informed the trial court that private counsel was unavailable until January 19, 2018. The court granted defendant's request to continue the case until then.

¶ 20    On January 19, 2018, private counsel failed to appear in court. Defendant stated that his family "pushed" the attorney on him, and because the attorney did not appear, defendant would continue *pro se*. The court asked, "So you don't want an attorney?" Defendant replied, "Correct." Defendant began to argue his motion for a new trial, during which he stated that he "failed to give

a proper closing argument" at trial. The court asked if defendant wanted to "re-do" his closing argument, and defendant said that he did. The court granted a continuance.

¶ 21     On January 29, 2019, defendant argued his "motion to reconsider," which the trial court denied. At defendant's request, the court appointed an APD to represent him at sentencing.

¶ 22     On March 20, 2018, an APD stated that the matter was on call for defendant's motion for a new trial. The motion alleged that the State failed to prove defendant guilty, the trial court erred in assessing the credibility of the witnesses, and the finding was against the weight of the evidence. The court denied the motion. Defendant's presentence investigation report showed that he pleaded guilty to driving on a revoked or suspended license in 2016. After a hearing, the court sentenced defendant to three years' imprisonment.

¶ 23     On appeal, defendant argues that (1) the trial court did not substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) because it did not advise him of his right to a court-appointed attorney, resulting in his unknowing waiver of his right to counsel, and (2) he did not knowingly waive his right to a jury trial because the trial court insufficiently admonished him concerning his jury trial rights.

¶ 24     Initially, defendant concedes that he forfeited review of his claims by not raising them in the trial court or including them in his posttrial motion. See *People v. Belknap*, 2014 IL 117094, ¶ 66 ("To preserve an alleged error for review, a defendant must both make an objection at trial and include the issue in a posttrial motion."). He asserts, however, that we may review his claims for plain error. The plain-error doctrine is a "narrow and limited exception" to the general forfeiture rule. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). It permits review of a forfeited claim when a clear or obvious error occurred, and either (1) "the evidence is so closely balanced that the error

alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Our first question is whether the trial court erred. *People v. Sebby*, 2017 IL 119445, ¶ 49. We discuss each of defendant's claims of error in turn.

¶ 25    First, defendant alleges that the trial court inadequately admonished him of his right to a court-appointed attorney because when defendant said he wanted to fire his private counsel, the court did not inform him that he was entitled to court-appointed representation.

¶ 26    Rule 401(a) provides that a trial court shall not permit a defendant subject to a prison sentence to waive counsel without addressing the defendant in open court and informing him of and determining that he understands: (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including any penalty because of prior convictions; and (3) that he has a right to counsel and, if indigent, to have counsel appointed by the court. Ill. S. Ct. R. 401(a) (eff. July 1, 1984); *People v. Pike*, 2016 IL App (1st) 122626, ¶ 110. Strict compliance with Rule 401(a) is not necessary; only substantial compliance is required. *Pike*, 2016 IL App (1st) 122626, ¶ 112. Substantial compliance occurs if the record indicates that the defendant's waiver was made "knowingly and voluntarily" and the court's admonishments did not prejudice the defendant. *People v. Wright*, 2017 IL 119561, ¶ 41. While we review the court's assessment of whether a defendant's waiver of counsel was knowing and voluntary for an abuse of discretion, we review a court's compliance with Rule 401(a) *de novo*. *Pike*, 2016 IL App (1st) 122626, ¶ 114.

¶ 27    Here, the trial court substantially complied with Rule 401(a). On June 27, 2016, the trial court advised defendant of his right to an attorney and asked defendant if he wanted the court to

appoint one for him. Defendant said that he did, and the court appointed an APD. Thus, defendant knew that he could have appointed counsel. On August 31, 2016, defendant stated that he had hired private counsel, and at a later hearing, the court confirmed that defendant wanted private counsel to replace the APD. On June 14, 2017, defendant stated that he wanted to fire private counsel, and the court advised him that he could do so. When the court asked who would represent him, defendant stated that he would proceed *pro se*. The court then inquired into defendant's education, explained the advantages of having counsel and that he would be facing a prosecutor who was an attorney. And the court stated that defendant would be held to the same standards as an attorney. After being apprised of the potential negative consequences of self-representation, defendant rejected counsel and proceed *pro se*. To the extent defendant argues the court did not expressly state that counsel could be appointed free of charge if he was indigent, we note that defendant had an attorney appointed by the court, and the court did not suggest the appointment was conditioned on defendant's ability to pay or hold a hearing on that issue. See also *People v. Jackson*, 59 Ill. App. 3d 1004, 1008 (1978) (finding that although the court did not expressly state that if indigent, the defendant had a right to appointed counsel, the defendant nevertheless understood his right in part because he had been appointed a public defender prior to trial). Based upon this record, it is clear that defendant was aware of his right to an attorney and a right to appointed counsel and chose to represent himself with knowledge of those rights. Thus, defendant's waiver was made knowingly and voluntarily and he was not prejudiced by the court's admonishments, which substantially complied with Rule 401(a). No error occurred, and therefore, plain-error review of this issue is unmerited. See *Wright*, 2017 IL 119561, ¶ 41.

¶ 28　Second, defendant asserts that he did not knowingly waive his right to a jury trial because the trial court insufficiently admonished him concerning his jury trial rights. Specifically, defendant contends that the court did not explain the difference between a jury and a bench trial.

¶ 29　The United States Constitution and Illinois Constitution both guarantee the fundamental right to a jury trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. A defendant's waiver of his right to a jury trial must be "knowingly and understandingly made." *People v. Bracey*, 213 Ill. 2d 265, 269 (2004); 725 ILCS 5/103-6 (West 2016)). The validity of a jury waiver "depends on the facts and circumstances of each particular case." *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). A written waiver is one way to establish a defendant's intent to waive his right, but it is not always dispositive. *Bracey*, 213 Ill. 2d at 269-70. Other relevant factors include the defendant's level of education (*People v. Frey*, 103 Ill. 2d 327, 333 (1984)), and familiarity with the criminal justice system (*Bannister*, 232 Ill. 2d at 71). The critical question is whether a defendant waived his right to a jury trial with the understanding that "the facts of the case will be determined by a judge and not a jury." *Id.* at 69. Where, as here, the facts of the case are not in dispute, we review the validity of a jury waiver *de novo*. *Id.* at 66.

¶ 30　Here, defendant's jury waiver was valid. On June 27, 2016, defendant told the trial court that he knew what a jury trial is. On September 26, 2017, the court admonished defendant of his right to a trial by jury and asked defendant if he wanted a jury trial or a bench trial. Defendant stated he wanted a bench trial, wished to waive his right to a jury trial, and signed a jury waiver that said, "I, the undersigned do hereby waive jury trial and submit the above entitled cause to the Court for hearing." Defendant then assured the court that no one made any promise or threats for him to waive his right to a jury trial, and that he made the decision of his own free will. Although

the court did not explain the difference between a jury and a bench trial, defendant attended some college, knew that he could choose between a jury and a bench trial, and signed a waiver expressing the implication of his choice, *i.e.*, that the case would be heard by the court and not a jury. These circumstances, taken together, show that defendant understood the difference between a jury and a bench trial. Therefore, no error occurred, and defendant's request for plain-error review is meritless. See *id.*

¶ 31    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 32    Affirmed.