# Illinois Official Reports

## Appellate Court

---

### *People v. Jordan*, 2019 IL App (1st) 161848

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELGIN JORDAN, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-1848 |
| Filed | August 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-6809; the Hon. Stanley J. Sacks, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Eric E. Castañeda, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian A. Levitsky, and Raymond Griffin, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Pierce and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1 Elgin Jordan was convicted of possession of a controlled substance with intent to deliver and sentenced to eight years' imprisonment. On appeal, he contends that the trial court erred by (1) denying his request to waive a jury trial after the jury had been selected but before it was sworn and (2) applying the wrong legal standard for a posttrial hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). For the below reasons, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3 Mr. Jordan was charged by information with one count of possession with intent to deliver more than 3 grams but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2014)), arising from an incident in Chicago on March 31, 2015.

¶ 4 During a hearing on August 7, 2015, which Mr. Jordan did not attend, defense counsel asked the court to schedule a jury trial. On October 6, 2015, in Mr. Jordan's presence, counsel told the court, "we are set for jury today," but requested a continuance to subpoena witnesses. On November 16, 2015, counsel sought another continuance, and Mr. Jordan stated, "I would like to have this jury trial and everything, *** but I just want to get on record that I have been having small problems with my counsel." The court granted the continuance.

¶ 5 On January 5, 2016, the trial court conducted *voir dire*, and the parties selected a jury. The court excused the jurors for the night but did not swear them.

¶ 6 Before trial on January 6, 2016, Mr. Jordan told the court that he wanted to "just waive my jury trial and go *pro se*." The following exchange occurred:

"THE COURT: I'm not accepting a waiver at this point. So you'll still have a jury trial, sir. *** We spent four hours—almost four hours getting a jury yesterday. You wanted a jury. You got a jury. I'm not going to take a bench trial at this point. If you want to go *pro se*, go *pro se*.

[MR. JORDAN]: Okay. Well, I mean—

THE COURT: I'll admonish you of your rights going *pro se*, but it will be in front of a jury and we can just finish the jury now.

[MR. JORDAN]: And it h[as] to be today?

THE COURT: I don't see a reason why it wouldn't be today, sir. We picked the jury yesterday. It took three and a half hours to get the jury picked. *** [T]he jurors will be here by 11:00 o'clock."

¶ 7 Mr. Jordan responded that counsel had not filed "pretrial motions" and asked to "go in the back" to "finish" motions he had prepared. Mr. Jordan also requested an "evidentiary hearing" and asserted that he had complained to the Attorney Registration and Disciplinary Commission about his attorney. The court stated, "we're done playing the games" and "[y]ou're going to trial today with this jury with [counsel] or *pro se*." The court then asked:

"THE COURT: *** Why didn't you answer before I got the jury picked yesterday, three and a half hours of going back and forth getting the jury picked?

[MR. JORDAN]: Sir, I had brought it to your attention *** November 16th.

* * *

\*\*\* I said I was having discrepancies with my attorneys and you said—

THE COURT: Discrepancies do[n't] mean you're entitled to waive a jury at this point or not go to trial today, sir.

\* \* \*

You waited until after we spent three and a half hours getting the jury picked and now today you want to either go *pro se* or waive the jury. I will not accept a waiver at this point after going through all that. If you wanted to waive a jury, you could have done it yesterday before we even started."

¶ 8 The case proceeded to a jury trial, where Mr. Jordan was represented by counsel.

¶ 9 The evidence established that, at approximately 9 a.m. on March 31, 2015, Chicago police officer Bryan Cox was conducting narcotics surveillance on the 3900 block of West Roosevelt Road. On two occasions, he observed unknown men approach Mr. Jordan and give him money in exchange for small black items that Mr. Jordan took from his sleeve. After the second transaction, Officer Cox radioed Mr. Jordan's description and location to Officer Theodore, who approached Mr. Jordan for a field interview. Mr. Jordan told Officer Theodore that he had "blows in [his] sleeve," and Officer Theodore recovered a clear plastic bag with nine black-tinted plastic bags containing suspected heroin. The officers arrested Mr. Jordan and took him to the police station, where they inventoried the bags, searched him, and found $229. A forensic chemist determined that the substances in the nine bags tested positive for 3.6 grams of heroin. The jury found Mr. Jordan guilty of possession of a controlled substance with intent to deliver.

¶ 10 Mr. Jordan filed a *pro se* posttrial motion for a new trial, raising several claims of ineffective assistance of counsel. The trial court conducted a *Krankel* hearing, and after questioning Mr. Jordan regarding his allegations, concluded that counsel was "competent" in "matter[s] of trial strategy" and that Mr. Jordan "was not prejudiced by anything the lawyer did." Trial counsel filed an amended motion for new trial, which the court denied. Following a hearing, the court sentenced Mr. Jordan to eight years' imprisonment.

¶ 11                                                    II. JURISDICTION

¶ 12 Mr. Jordan was sentenced on June 15, 2016, and timely filed his notice of appeal that same day. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Dec. 11, 2014), governing appeals from final judgments of conviction in criminal cases.

¶ 13                                                    III. ANALYSIS

¶ 14 Mr. Jordan's first argument on appeal is that the trial court had no discretion to deny his request to waive a jury trial. Mr. Jordan claims that because he made this request before the jury was sworn in, although it had already been selected, his trial had not yet commenced, and therefore his right to waive a jury trial was absolute.

¶ 15 Criminal defendants have a constitutional right to a jury trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. As our supreme court has made clear, "the dimension of the constitutionally protected right to a jury trial encompasses the right of an accused to waive trial by jury." *People v. Stamos*, 214 Ill. App. 3d 895, 902 (1991) (citing *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988)). We have held that before trial commences, the right to

waive a jury trial is unfettered (*People v. Zemblidge*, 104 Ill. App. 3d 654, 656 (1982)) and a jury may be "understandingly waived by [a] defendant in open court" (725 ILCS 5/103-6 (West 2014)).

¶ 16    However, we have also held that once the trial begins, a defendant lacks the absolute right to waive a jury, and whether a waiver will be granted depends on "the sound discretion of the trial court." *Zemblidge*, 104 Ill. App. 3d at 656-57. As we recognized in *Zemblidge*, it would make a "mockery" of the judicial system, would "impede the prompt and fair administration of justice," and "would be an improper utilization of jurors' time, and a waste of State resources and expenditures" if a defendant could choose a bench trial whenever the outcome of a jury trial seemed as if it would be unfavorable. *Id.* at 656. The trial court has discretion to allow a jury waiver after the trial begins because, at that point, the defendant no longer has an absolute right to forgo the jury and choose a bench trial. *Id.*

¶ 17    The State's first response is that, because Mr. Jordan did not raise this issue in his posttrial motion, this claim has been forfeited. See *People v. Staake*, 2017 IL 121755, ¶ 30 ("To preserve a claim of error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). Mr. Jordan argues that we should address the issue in the interest of judicial economy because it implicates a constitutional right that could be raised in a postconviction petition, or—as we elect to do here—under the plain error doctrine.

¶ 18    The plain error doctrine is a "narrow and limited exception" to the general forfeiture rule. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Pursuant to the doctrine, a reviewing court may consider unpreserved errors where (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. Our supreme court has held that a violation of the right to select a bench or jury trial constitutes second-prong plain error. *People v. Bracey*, 213 Ill. 2d 265, 270 (2004). We agree with Mr. Jordan that he has not forfeited this claim.

¶ 19    Mr. Jordan contends that trial had not yet commenced when he asked to waive his right to a jury on January 6, 2016, because, although the jury had been chosen, it had not been impaneled or sworn. The State's position is that the trial commenced when the court began to *voir dire* the jury pool. We agree with Mr. Jordan that the point at which the jury is sworn is the point at which a criminal defendant loses his absolute right to waive a jury.

¶ 20    In *People v. Rand*, 291 Ill. App. 3d 431 (1997), the defendant moved to waive his right to a bench trial after the jury had been sworn but before the start of testimony. *Id.* at 435-36. We held that the defendant lacked "an absolute right to waive a jury trial prior to the beginning of testimony" and that "the trial court has discretion to deny a jury waiver after the jury is impaneled and sworn, even if testimony has not yet begun." *Id.* at 436. The premise of our holding in *Rand* was that "[a] trial is deemed to have commenced after the jury is impaneled and sworn." *Id.*

¶ 21    *Rand* is consistent with decisions by our supreme court and the United States Supreme Court holding that, for double jeopardy purposes, a trial begins when the jury is sworn. See *Martinez v. Illinois*, 572 U.S. 833, 834 (2014) (*per curiam*) ("Our cases have repeatedly stated the bright-line rule that jeopardy attaches when the jury is empaneled and sworn." (Internal

quotation marks omitted.)); *People v. Friason*, 22 Ill. 2d 563, 565 (1961) (for double jeopardy, "[t]he trial and jeopardy begin when the accused has been arraigned and the jury impaneled and sworn"). If we adhere to the line that we drew in *Rand*, Mr. Jordan's conviction must be reversed because the trial court had no discretion to deny his right to waive a jury trial, since the jury had not yet been sworn.

¶ 22    The State, relying on *People v. Vest*, 397 Ill. App. 3d 289 (2009), urges us to find that Mr. Jordan's trial began earlier, when the court began conducting *voir dire* on January 5, 2016. In *Vest*, the defendant appealed a conviction due to alleged flaws in the indictment. *Id.* at 289. The parties disputed when trial started for purposes of determining whether the defendant needed to show prejudice, which is required when an indictment is challenged *after* trial begins. *Id.* at 291. In that context, we held that a trial starts with *voir dire*. *Id.* at 295.

¶ 23    We are not persuaded by the State's reliance on *Vest*. The court in *Vest* specifically recognized the line we drew in *Rand* and did not question that it was appropriate for determining when a defendant lost the absolute right to waive a jury trial. *Id.* at 292. The court's decision to draw a different line in *Vest* was tied to considerations that are simply not present here:

> "[I]f a defendant moves to dismiss a charging instrument in a pretrial motion, the court should dismiss the relevant count if it fails to allege an offense, whereas, if he or she makes that motion anytime after the trial's start, the court should dismiss the relevant count only if the defect prejudices the defendant." (Emphasis omitted.) *Id.* at 291.

As the *Vest* court noted, once *voir dire* has started, it would be "impractical" for the State to go before the grand jury to get an amended indictment, making it appropriate for the court to require a defendant to show prejudice at that point. *Id.* at 295. That rationale simply does not apply here.

¶ 24    We instead agree with Mr. Jordan that our cases have appropriately drawn the line, for purposes of defining when a defendant no longer has an absolute right to waive a jury trial, at the moment the jury is sworn. This is the same bright line that defines the start of a trial for double jeopardy purposes, and we see no reason to stray from it here. While there is a risk that, in some cases, this could result in wasted time for the court—and, even more unfortunately, for prospective jurors—we suspect that such cases will be rare. Wasting a trial judge's time with lengthy *voir dire* only to turn around and ask the same judge to decide the merits of the case does not strike us as sound trial strategy. Trial courts seeking to avoid the specific result in this case can also swear in the jury as soon as it has been selected, rather than having jurors come back to be sworn in the next day.

¶ 25    We are sympathetic to the decision made by the trial court in this case. Mr. Jordan's request was disruptive, likely dilatory, and complicated by the fact that it was intertwined with a request to proceed *pro se*. However, when Mr. Jordan asked for a bench trial, the jury had not been sworn in. Because, as we now hold, this means that the trial had not yet commenced, Mr. Jordan's right to waive a jury trial remained absolute. See *Rand*, 291 Ill. App. 3d at 436; *Zemblidge*, 104 Ill. App. 3d at 656. The trial court lacked discretion to deny the request at that juncture and erred by refusing to grant a bench trial. Because denial of the right to waive a jury trial affects the fairness of proceedings and is plain error (*Bracey*, 213 Ill. 2d at 270; *Joyce*, 126 Ill. 2d at 222), Mr. Jordan's conviction must be reversed. Given this result, we do not reach his additional argument regarding the *Krankel* hearing.

¶ 26     As the evidence of record supports a finding of guilt on the charged offense, double jeopardy is no bar to retrial. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995).

¶ 27                              IV. CONCLUSION

¶ 28     For the foregoing reasons, we reverse the judgment of the circuit court and remand for a new trial.

¶ 29     Reversed and remanded.